### HART v. SMITH.

Action of *indebitatus assumpsit* is not sustainable for money had and received, founded on a mistake in a settlement, on which an acquittance is given, though a special action on the case, pointing out such mistake, is sustainable.

This was a general *indebitatus assumpsit*, for money had and received.

The case, from the pleadings, was this:— The plaintiff being brigadier-general of a brigade of militia, and the defendant a colonel under his command, received of the plaintiff the sum of £1,578 in bills of this state, to be applied to public use, and to account. On the 4th day of January 1783, the defendant rendered an account of the application of the moneys so received, and a settlement was made by the parties; the plaintiff gave to the defendant an acquittance from all demands on this account, and the defendant delivered to the plaintiff all his vouchers and other papers relative to the matter: That by means of a double charge and misentry, two mistakes had happened in the settlement, against the plaintiff, to the amount of £202 14s. 6d.

On demurrer, the question was, whether this general action of *indebitatus assumpsit*, is sustainable after a settlement and acquittance.

Judgment was for the defendant.

By Law, C. J., Dyer, Sherman and Pitkin, JJ. The facts conceded by the pleadings, do not support this action. — It appears by the pleadings, that the only money received by the defendant of the plaintiff, was a sum of state bills, which he received as a public officer, to pay over to the soldiers of his regiment, for which he was accountable; and if he had failed of performing his undertaking, the plaintiff's legal and proper remedy would have been an action of account: But the defendant having rendered his account to

the plaintiff, to his acceptance, and the same having been settled by their mutual agreement, and the defendant's vouchers delivered up to the plaintiff; the defendant relying wholly on the plaintiff's acquaintance for his security (as in his plea is alleged) he ought not to be subjected to the plaintiff's demand in this action, upon any supposed mistake in the settlement, which cannot be ascertained but by opening the whole account to a new examination and settlement.

This kind of action is a beneficial remedy in many cases, but ought not to be extended so far as to destroy the effect of all legal settlements and acquittances, made by agreement of the parties.— If a mistake is made in settlement of an account, which appears from the face of the account itself, a special action of the case pointing out such mistake, may be sustained.

ELLSWORTH, J., dissenting.  It appears from the pleadings in this case, that the defendant, having received £1,578 of the plaintiff's moneys, in bills, to pay over and account; afterwards, viz. in January, 1783, rendered his account in writing, amounting to £1,440 8s. 4d. which was allowed, and he gave his note, payable to the treasurer, for the remaining balance of £137 11s. 8d. which note the plaintiff receipted in writing, as the balance due to him, and gave up the original receipt he held against the defendant.  It is further stated by the plaintiff, and not denied by the defendant, that in said settlement there happened a mistake of £222 2s. by means of the defendant's having twice charged an article to that amount, appearing from the account itself.    Also, a further mistake of £180 12s. 6d. in favor of the defendant, occasioned by a misentry: by which means the defendant has

retained in his hands £202 14s. 6d. of the plaintiff's moneys, without any consideration, and unjustly. And the question is, has the plaintiff any remedy? And if he has, can he recover in this action?

It is an established principle of law, founded in the most apparent justice, that an action will lie for money paid by mistake; and it makes no difference whether the mistake happens in settlement of an account, or of any other matter: It is sufficient to maintain the action, that there has been a settlement, and a mistake therein, whereby the defendant has obtained money of the plaintiff, which in conscience he ought not to retain. The difficulty lies, in showing with clearness and certainty, that the mistake has happened, which in all cases cannot be done; as where a settlement is made in gross, without computation or regard had to particulars; so where a settlement is made on computation, but the evidence of the computation is not preserved, and only a receipt is given, to show that a settlement has been made. But other cases there are, in which the mistakes are clear and certain; as where they have happened by a miscast, a mistaken, or double entry, and the account or statement is preserved for inspection, as in the present case; so where the mistake has happened by the misconception of a fact, which afterwards comes to light; as where a loss has been allowed on a policy of insurance, and the vessel afterwards safely arrives. Whenever the mistake is apparent, or from the nature and circumstances of it clearly demonstrable, a remedy may and ought to be admitted; nor will the admission of it invalidate the settlement of the parties, which may still be left to operate, so far forth as the same was understandingly made. Rectifying the errors or mistakes of a settlement, does not

destroy it, but only makes it what the parties designed it should be; and the court, on the trial of every such case, will confine the plaintiff to lay his finger at once upon the mistake, and not suffer him unnecessarily to ramble over the settlement, nor to go upon evidence of a loose or dangerous kind. But it is contended, that the plaintiff has barred himself of a recovery in this case, by the receipt he passed for the balance found due to him upon account rendered: This receipt is a mere matter of evidence; it proves (which is all it was designed for) that there has been an account rendered by the defendant, and a settlement had thereon; but it does not at all affect the question, whether the mistakes that have happened in that settlement can be rectified. It is no argument that the mistake cannot, or ought not to be rectified; that there has been a settlement, in which the mistake happened. By the settlement, indeed, which has been had in this case upon the defendant's account rendered, the plaintiff's original action of account is gone; but this action is for a different matter; it is for money obtained in and by that settlement through mistake, viz. by an overpayment, or allowance there made to the defendant. In corroboration of his plea in bar, the defendant has averred, that at the time of the settlement he gave up his receipts and papers; but as the averment was not traversable, it required no answer, and is not to be taken *pro confesso*. And besides, the burden does not lie upon the defendant to make out that the settlement was right, which is to be presumed, but on the plaintiff to show a mistake; and unless he produces all the papers that can have relation thereto, and clears the point of doubt, he must fail: And it would be seasonable for

the defendant to avail himself of the loss of his papers when it should appear on the trial, from the nature of the mistake alleged, that they could have any relation to such mistake.

But admitting that neither this averment, nor the receipt relied upon, are sufficient to bar the plaintiff of a remedy; a question is still made, whether he can recover in this action, which is a general *indebitatus assumpsit*, for money had and received to the plaintiff's use? This is a kind of action well known in our practice, as well as in the common law of England; and from the equity of the principles on which it proceeds, and the extensiveness of the remedy it gives, is highly favored. It lies generally where one has received money belonging to another, without any valuable consideration on the receiver's part; for the law construes this to be money had and received to the use of the owner only; it is in nature of a bill in equity, and is applicable to almost every case where the defendant has received money, which *ex equo et bono*, he ought not to retain; and particularly where he has obtained it by imposition or mistake (3 Blackstone's Com. 162; Cowper, 197) as in the present case. It is true, indeed, the defendant did not in this case directly receive any money when the mistake happened; but at a settlement and payment of his account then rendered, he had an offset of the plaintiff's moneys in his hands, which is substantially the same thing as if he had then directly received it from the hand of the plaintiff. It is true also, that the offset of payment he then received was not in money, but in state bills; but then those bills being in nature of money, this action lies for them as for money, as it doth also for bills of exchange

and negotiable notes.   2 Blackstone's Reports, 828; Cowper, 197.   So that the defendant may be considered as having by mistake received the plaintiff's moneys, and to the plaintiff's use; which is sufficient to maintain the action.   It has, however, been urged, that the plaintiff must fail in this action, because he has not declared specially; and that were it admitted under a general count for money had and received to the plaintiff's use, to give in evidence the payment of money by mistake, the defendant might be surprised:   But the objection goes to exclude this kind of action altogether; for the count is always thus general for money had and received to the plaintiff's use; and the plaintiff is left to make out his case, and show the particular manner and circumstances of the money's being had or received upon the evidence.   Nor is this a more beneficial indulgence to the plaintiff than the defendant in this kind of action has in his defense:   As the trial is on equitable principles, he may, under the general issue of *non assumpsit*, disprove the facts set up by the plaintiff, or set up other, and independent facts, to rebut the equity of the plaintiff's demand.   Burrow, 1006. The generality both of the charge and defense are supposed to be adapted to the nature and design of the action.

As to the surprise apprehended, it can very seldom happen that a defendant will remain unconscious, or unapprised of the ground the plaintiff means to rely upon, until the final trial.   If, however, this at any time does happen, and the defendant is apparently surprised, the court will relieve him by a new trial; but they never will regard the possibility that from the nature of the action there might have been a surprise, when it appears that the defendant before final trial,

in fact had notice.    Cowper, 805; Douglas, 133, Long-champ v. Kenney.

In a late case of Waldron v. Halsey, in the county of New London, where a recovery was had for money paid upon a settlement under a general *indebitatus assumpsit*, and a new trial was moved for, upon a suggestion *(inter alia)* that from the generality of the count, the defendant was liable to be surprised, and was in fact so; yet it appearing to the court that he was not surprised on the final trial, but had notice in the court below, a new trial was refused.    In this case there was a full disclosure in the court below, both by the pleadings and the evidence on a hearing in damages.    For the reasons above suggested, it appears to me that the plaintiff is not barred of his remedy, and might recover in this action, and should be admitted to a trial of his cause upon the evidence; and therefore that his replication is sufficient.

N. B.— This judgment was afterwards affirmed in the Supreme Court of Errors.